# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

KAREN MARTIN                                                                                PLAINTIFF

V.                                                                                    1:07-CV-91-SA-JAD

PEPSIAMERICAS, INC.                                                                         DEFENDANT

## MEMORANDUM OPINION

Before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [82]. For the reasons stated below, the motion is granted.

Additionally, the Court withdraws the portions of its earlier opinions addressing the appropriate statute of limitations to be applied to Plaintiff's claim [67], whether Defendant is entitled to a set-off [67], and the amount of the set-off [77].

### I.     FACTUAL BACKGROUND

In 1999, Plaintiff began her employment with the Defendant as a route settlement clerk. Plaintiff worked in the clerk position at the Defendant's Columbus, Mississippi, facility for approximately five years. Defendant classified her as non-exempt from overtime. On January 5, 2004, Plaintiff was given the position of route settlement supervisor. Defendant then classified Plaintiff as exempt from overtime. Plaintiff held the supervisor position until she was terminated effective January 2, 2006.

Upon leaving her employment, Plaintiff entered into a separation agreement with Defendant that she "has not filed any complaints, charges, lawsuits, or any other claims against the Company arising out of the employment relationship and/or termination of employment and that, except to enforce the terms of this Agreement, she will not do so at any time hereafter." In return, Defendant agreed to provide Plaintiff with: 1) salary continuance of twenty-three weeks;

2) company payment for continued health and insurance benefits for twenty-three weeks; 3) a tenure lump sum payment of six weeks' salary; 4) three weeks' salary for unused vacation time; 5) a bonus for the year 2005; and 6) outplacement services.

## II.     PROCEDURAL BACKGROUND

Plaintiff filed this suit alleging that Defendant violated the Fair Labor Standards Act ("FLSA") by not paying her overtime wages for any hours in excess of forty hours that she worked in a given week.[1] Plaintiff claims that she was a non-exempt employee and, therefore, entitled to overtime pay.

Defendant filed its Motion for Summary Judgment, arguing that prior to filing this lawsuit, Plaintiff signed a contract in which she waived her right to bring this lawsuit in exchange for certain benefits. Alternatively, Defendant argued 1) that it is entitled to offset damages in the event that Plaintiff prevails at trial; 2) that Plaintiff is not entitled to liquidated damages; and 3) that a two-year (as opposed to a three-year) limitations period governs this case.

This Court ruled that, as a matter of law, Plaintiff could not waive her rights under the FLSA, and, therefore, the Court denied Defendant's Motion for Summary Judgment on the grounds of waiver. The Court further ruled that should Plaintiff prevail at trial, any damages awarded would be offset by the benefits received in the separation agreement, in an amount to be determined at trial. Also, the Court denied Defendant's motion as to liquidated damages, as Defendant failed to offer any affirmative evidence that it acted reasonably and in good faith in its efforts to comply with the law. Finally, the Court ruled that Plaintiff would be limited to back pay for a period of two years, should she prevail at trial, since no reasonable factfinder could conclude that Defendant's conduct amounted to a willful violation of the FLSA.

---
[1] Plaintiff also initially brought claims of fraudulent misrepresentation and punitive damages which have since been jointly dismissed.

Defendant filed a Motion for Clarification, asking the Court to clarify its earlier opinion as to two issues. First, Defendant asked how any back overtime wages would be calculated, if Plaintiff were to prevail at trial. Second, Defendant asked for the amount of the offset to which it would be entitled, should Plaintiff prevail. In its opinion on the Motion for Clarification, the Court held that the record contained insufficient facts to determine how many hours per week Plaintiff's salary was intended to compensate, preventing the Court from determining the proper calculation method.[2] The Court also held that Defendant was entitled to an offset equal to the combined monetary value of all the benefits conferred upon Plaintiff in the separation agreement.

Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, arguing that the maximum damages awardable to Plaintiff do not exceed Defendant's set-off. The Court scheduled a hearing and instructed the parties to prepare briefs addressing the issues of (1) the application of equitable tolling and/or equitable estoppel to the statute of limitations on Plaintiff's FLSA claim, and (2) whether unused vacation time valued at $1,433.08 and a bonus of $7,834.04 should be applied as set-offs to any damages that may be awarded to Plaintiff in this action. Additionally, the Court invited the parties to brief any additional issues they felt the Court needed to readdress.

### III. DISCUSSION

#### A. *Statute of Limitations*

Plaintiff continues to contend that the principle of equitable estoppel bars application of the two-year statute of limitations. Plaintiff argues that the failed exemption classification and

---

[2] In retrospect, the Court had sufficient evidence at the time this issue was first raised, in that the only evidence Plaintiff offered to rebut her own sworn testimony as to the salaried nature of her position was an unsworn allegation in a pleading. A "nonmovant, to avoid summary judgment as to an issue on which it would bear the burden of proof at trial, may not rest on the allegations of its pleadings, but must come forward with proper summary judgment evidence sufficient to sustain a verdict in its favor on that issue." Austin v. Will-Burt Co., 361 F.3d 862, 866 (5th Cir. 2004).

separation agreement were misrepresentations by Defendant which she relied upon, causing her delay in filing this action.

The Court withdraws its earlier rulings on this issue. For purposes of addressing Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, the Court shall assume, without deciding, that Plaintiff may seek FLSA damages for the full period of time that she was employed as a route settlement supervisor.

## B. *Defendant's Set-Off*

The Court previously ruled that Defendant was entitled to a set-off against any award Plaintiff may receive in this matter [67], and the Court later clarified that opinion and held that all the benefits conferred upon Plaintiff pursuant to the separation agreement would function as a set-off against any potential damages award [77]. The Court now withdraws its prior opinions on this issue.

The Court cited Johnson v. Martin for the proposition that courts in this jurisdiction set-off post-termination earnings against awards in FLSA cases. See Johnson v. Martin, 473 F.3d 220, 222 (5th Cir. 2006) (per curiam). However, Johnson involved a retaliation claim under the FLSA, not a claim for back overtime wages. Id. at 221. In that case, the Fifth Circuit held that the post-termination wages functioned as a set-off to the back pay award. Id. While it is reasonable that post-termination wages would offset a back pay award in a retaliatory discharge case, post-termination wages have no logical relation to back overtime wages that a plaintiff has allegedly already earned. Therefore, the Court erred when it relied on Johnson for the proposition that the severance package conferred on Plaintiff should set-off any back overtime wages owed to her.

Defendant argues, however, that the benefits conferred upon Plaintiff should function as a set-off to Plaintiff's overtime wage claim. A "setoff is a counter demand which a defendant holds against a plaintiff arising out of a transaction extrinsic of plaintiff's cause of action." REW Enters., Inc. v. Premier Bank, N.A., 49 F.3d 163, 170-71 (5th Cir. 1995) (quoting Howard Johnson, Inc. v. Tucker, 157 F.2d 959, 961 (5th Cir. 1946)); see also IRS v. Luongo, 259 F.3d 323, 333 n. 8 (5th Cir. 2001). Some federal courts have allowed employers to plead set-offs as an affirmative defense to an FLSA wage claim "where the employer paid the employee funds to which the employee was not entitled." Saphos v. Grosse Pointe Dev. Co., Inc., 2008 U.S. Dist. LEXIS 29182, *14 (M.D. Fla. Apr. 9, 2008).[3] "If the amount of a setoff exceeds the amount of overtime compensation owed, the employee may not recover for the unpaid overtime." Reasoner, 2007 U.S. Dist. LEXIS 90308 at *26. Further, federal courts have consistently held that FLSA plaintiffs should not receive a windfall at the employer's expense. Garcia v. San Antonio Metro. Transit Auth., 838 F.2d 1411, 1419-20 (5th Cir. 1988).[4]

In the present case, the parties entered into an agreement in which Defendant conferred upon Plaintiff certain benefits in exchange for a release of all claims related to Plaintiff's employment. The agreement was ineffective as to Plaintiff's FLSA claims as a matter of law.[5]

---

[3] See also Hanzlik v. Birach, 2009 U.S. Dist. LEXIS 63091, *13-*14 (E.D. Va. July 14, 2009) (set-off may be raised as an affirmative defense in FLSA cases) (citing Singer v. City of Waco, 324 F.3d 813, 828 n. 9 (5th Cir. 2003)); Haught v. U.S. Eng'g Corp., 2009 U.S. Dist. LEXIS 2255, *4-*5 (S.D. Fla. Jan. 6, 2009) ("Certain set-off defenses are allowable under the FLSA.") (citing Brennan v. Heard, 491 F.2d 1, 4 (5th Cir. 1974)); Robinson v. Roofs, Structures, & Mgmt., Inc., 2007 U.S. Dist. LEXIS 92644, *4 (M.D. Fla. Dec. 18, 2007) (court rejected argument that defendants may not assert counterclaim that creates a set-off to an FLSA claim) (citing Singer, 324 F.3d at 828, n. 9)); Reasoner v. All Seasons Pool Serv., Inc., 2007 U.S. Dist. LEXIS 90308, *26 (M.D. Fla. Dec. 7, 2007) ("A setoff is pay that an employee receives to which he or she was not otherwise entitled that is subtracted from any amount of overtime compensation owed."); Mercer v. Palm Harbor Homes, Inc., 2005 U.S. Dist. LEXIS 28290, *5 (M.D. Fla. Nov. 10, 2005) (set-off permitted to reduce any damages recovered by plaintiff); Tibensky v. C.D.C. Acquisition Corp., 2005 U.S. Dist. LEXIS 45858, *2 (M.D. Fla. Aug. 12, 2005) (court declined to strike affirmative defense of set-off for severance payment).
[4] See also Roman v. Maietta Constr., 147 F.3d 71, 77 (1st Cir. 1998); Holst v. State Dep't of Conservation & Natural Res., 1995 U.S. App. LEXIS 12829, *2 (9th Cir. May 24, 1995); Vanskike v. Peters, 974 F.2d 806, 812 (7th Cir. 1992); Ackinclose v. Palm Beach County, 845 F.2d 931, 935 (11th Cir. 1988).
[5] Allen v. Atl. Richfield Co., 724 F.2d 1131, 1135 (5th Cir. 1984).

However, the agreement included the following provision: "The provisions of this Agreement are severable, and if any part of the Agreement is found to be unenforceable, the other provisions shall remain fully valid and enforceable." [6] The agreement further provided that the benefits conferred upon Plaintiff are subject to recoupment, "in the event that Employee engages in any conduct violative of the terms of [the] Agreement." Therefore, by initially asserting state law claims for fraudulent misrepresentation and punitive damages, Plaintiff breached the Separation Agreement, and Defendant is entitled to recoup the benefits conferred therein. See Mezger v. Price CPA's, PLLC, 2008 U.S. Dist. LEXIS 68859, *11-*12 (M.D. Tenn. Sept. 8, 2008).[7]

Plaintiff argues that Defendant is not entitled to an offset of damages because the payments under the severance agreement do not fall within the categories of 29 U.S.C. § 207(e)(5)-(7). The FLSA requires that an employer pay its employee overtime wages for all hours worked in excess of forty, but "an employer may choose to compensate its employees at a premium or overtime rate for hours worked less than forty per week." Hesseltine v. Goodyear Tire & Rubber Co., 391 F. Supp. 2d 509, 522 (E.D. Tex. 2005) (citing 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.201(a) (2004); Singer, 324 F.3d at 828). Section 207(h) and Sections 207(e)(5)-(7) address situations in which an employer makes premium overtime payments that are not required under the FLSA. Hesseltine, 391 F. Supp. 2d at 522-23; Singer, 324 F.3d at 827. The situation in the case *sub judice* is different. The severance payments were not given as premium overtime

---

[6] See City of Starkville v. 4-County Elec. Power Ass'n, 819 So. 2d 1216, 1230 (Miss. 2002) (". . . where (as here) an agreement founded on a legal consideration contains several promises, or a promise to do several things, and a part only of the things to be done are illegal, the promises which can be separated, or the promise, so far as it can be separated, from the illegality, may be valid.") (quotation omitted).

[7] Plaintiff cites Mezger for the proposition that monies paid pursuant to a severance agreement may not be used as a set-off against an FLSA damages award, as doing so would deprive the employee of the benefit received pursuant to the severance agreement. Id. at *10-*12. However, the case *sub judice* is distinguishable from Mezger, in that Plaintiff breached the severance agreement by bringing a state law claim of fraudulent misrepresentation against Defendant. Mezger, therefore, is applicable to this case insofar as it stands for the proposition that a party to a severance agreement should not be deprived of the benefit conferred therein. In fact, the Mezger court noted "that, in some situations, the damages awarded for a violation of the FLSA should be offset by payments made by an employer to the employee, prior to judgment, that were not part of the employee's regular wages." Id. at *10.

6

payments in compensation for hours Plaintiff had already worked or would work at some point in the future. Rather, they were given upon termination of Plaintiff's employment as consideration for a release of all claims related to the employment. Therefore, Section 207(h) and Sections 207(e)(5)-(7) are inapplicable.

In exchange for Plaintiff's release, Defendant gave Plaintiff the following benefits: 1) salary continuance of twenty-three weeks' salary, valued at $11,008.64; 2) payment of health and insurance benefits for twenty-three weeks, valued at $1,288.40; 3) a "tenure lump sum payment" of six weeks' salary, valued at $2,866.15; 4) payment of three weeks' salary for unused vacation time, amounting to $1,433.08; and 5) payment of a 2005 bonus, valued at $7,834.04. Plaintiff has offered no evidence to dispute these values, and, therefore, the Court accepts them as accurate.

There is no dispute that the salary continuance, benefits continuance, and lump sum payment were benefits to which Plaintiff was not entitled and were conferred upon her solely in consideration of her release. Therefore, they may be applied as a set-off.

The Court can not determine whether the $1,433.08 of unused vacation time may be applied as a set-off. Bobby Bryant, Defendant's regional manager, testified by way of affidavit that he was not sure whether Plaintiff was entitled to the unused vacation time. Neither Defendant nor Plaintiff has provided any further evidence on this point. Therefore, the Court shall not apply the $1,433.08 of unused vacation time as a set-off.

While the $7,834.04 bonus was for the year prior to Plaintiff's termination, under the terms of Defendant's incentive plan, employees were required to be active at the time the incentive was to be paid in order to receive it. Bryant testified, by way of affidavit, that the bonuses were scheduled to be distributed in February or March, 2006, but Plaintiff was

7

terminated in early January, 2006. Plaintiff has offered no evidence to dispute this testimony, and, therefore, the Court holds that Plaintiff was not entitled to the $7,834.04 bonus, and it may be applied as a set-off. Therefore, Defendant is entitled to a set-off of $22,997.23.[8]

Finally, the Fifth Circuit Court of Appeals has stated that funds may not be applied as a set-off against a back pay award if they would cause the employee's regular rate of pay to fall below the statutory minimum wage. Singer, 324 F.3d at 828 n. 9 (citing Brennan v. Heard, 491 F.2d 1 (5th Cir. 1974)). However, the application of these severance payments as a set-off has no effect on Plaintiff's regular rate of pay, in that they were not compensation for work. Further, Plaintiff's regular rate of pay was $7.35 per hour,[9] which is well above the minimum wage at the time - $5.15 per hour.[10]

### C. Computation of Back Overtime Wages

The Fifth Circuit Court of Appeals has held:

> An employee is a salaried and not an hourly employee if that person "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."

Cowart v. Ingalls Shipbuilding, Inc., 213 F.3d 261, 264-65 (5th Cir. 2000) (quoting 29 C.F.R. § 541.118(a)). The Fifth Circuit has also stated that courts may determine how many hours a salary is intended to compensate by examining the custom of those subject to the employment agreement. Singer, 324 F.3d at 824-25.

---

[8] $11,008.64 (23 weeks' salary) + $1,288.40 (23 weeks' benefits) + $2,866.15 (lump sum payment) + $7,834.04 (bonus) = $22,997.23
[9] ($477.69 per week) / (65 hours per week) = ($7.35) / (1 hour)
[10] The Court takes judicial notice of the minimum wage rate during the time period at issue in this lawsuit. Judicial notice may be taken of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." FED. R. EVID. 201(b).

During her deposition, when asked about whether she had been told anything about overtime wages before starting her new position as a route settlement supervisor, Plaintiff responded, "[T]o me it meant, salaried, meant that I would not be paid any overtime." She further testified that she knew she would not receive overtime before starting the job, and that she did not express any concern over being in a salaried position.

Additionally, Defendant has submitted a declarations from its payroll manager, Adele McCarty, who stated that, during her tenure as a route settlement *clerk*, Plaintiff was paid overtime wages when she worked more than forty hours a week. McCarty further stated that throughout Plaintiff's time in the route settlement *supervisor* position, she was paid on a salaried - exempt from overtime - basis. Plaintiff's salary never deviated, other than a raise in March, 2005, and, according to McCarty, the salary was intended to compensate Plaintiff for all the hours she worked each week. Bobby Bryant, Defendant's regional manager, stated in his declaration that Plaintiff was paid on an hourly basis when she worked as a route settlement *clerk*, and that she received overtime wages for any hours she worked over forty hours each workweek.

Plaintiff has submitted no evidence to support her allegation that her salary was only intended to compensate her for the first forty hours of work each week, beyond allegations in her briefing on the Defendant's Motion for Clarification and Motion to Dismiss for Lack of Subject Matter Jurisdiction. Therefore, based on Plaintiff's own testimony and the testimony of Defendant's payroll manager, the Court concludes that Plaintiff's salary during her employment as a route settlement supervisor was intended to compensate her for all the hours she worked each week, rather than the first forty alone.

The method for computing back overtime wages in a case in which the employer and employee agreed upon a fixed salary for varying hours and the employer incorrectly classified the employee as exempt from the Federal Labor Standards Act (a "failed exemption" case) is articulated in Blackmon v. Brookshire Grocery Co., 835 F.2d 1135 (5th Cir. 1988). The Fifth Circuit Court of Appeals stated:

> The correct method calls for dividing the actual hours worked each workweek into the fixed salary. This results in a determination of the regular rate of pay . . . for that workweek. The overtime payment for that week is then determined by multiplying all hours over 40 in the workweek by 1/2 the regular rate for that workweek. The amount due each plaintiff will be the sum total of each workweek's overtime during the two-year period of limitations.

Blackmon, 835 F.2d at 1138-39.[11] Therefore, the computation method outlined in Blackmon is the computation method that the Court shall apply in this case.

### D. *Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Although the Court declines to consider the statute of limitations issue, there is no dispute that the maximum period of time for which Plaintiff could possibly seek back overtime wages is one hundred five (105) weeks.[12] Plaintiff testified that she worked as many as forty to sixty hours each week, in addition to at least an additional five hours on one Saturday each month.

---

[11] The court is aware that Cox v. Brookshire Grocery Co., 919 F.2d 354, 357 (5th Cir. 1990), contradicts the analysis in Blackmon, stating that overtime payment for a workweek is determined by multiplying all hours over forty by one and one half the regular rate, rather than one half the regular rate. However, the Defendant's argument that the contradiction is nothing more than the result of an error on the part of the court is well-taken. First, the Cox decision cites the Blackmon decision as supporting the use of a one and one half multiplier, when the court, in fact, utilized a one half multiplier in Blackmon. Second, applying a one and one half multiplier to the hours above forty, in a situation in which an employee's salary is intended to compensate for all the hours worked each week would provide an employee with a windfall on the hours above forty, in that they would have already been paid a base salary for all the hours worked each week. All that would be lacking in such a situation would be the additional half-time for overtime. See Villegas v. Dependable Constr. Servs., 2008 U.S. Dist. LEXIS 98801, *79 (S.D. Tex. Dec. 8, 2008); Torres v. Bacardi Global Brands Promotions, Inc., 482 F. Supp. 2d 1379, 1381 n. 2 (S.D. Fla. 2007) ("Virtually every court that has considered the question has upheld the remedial use of half-time in failed exemption cases."); Saizan v. Delta Concrete Prods., 209 F. Supp. 2d 639, 640 (M.D. La. 2002); Knight v. Morris, 693 F. Supp. 439, 445 (W.D. Va. 1988).

[12] The period of time between January 5, 2004, and January 2, 2006, is 729 days, which approximately equals 105 weeks.

The Court will assume, for the sake of this motion, that Plaintiff worked sixty-five (65) hours each week during the 105 weeks at issue.

It is undisputed that Plaintiff's salary, during the time period at issue, was $2,070.00 per month,[13] which equals $477.69 per week.[14] Therefore, if Plaintiff worked sixty-five hours each week, her regular rate of pay was $7.35 an hour.[15] Her overtime payment for each week, using the calculation method articulated in Blackmon, would then be $92.00.[16] Therefore, the maximum amount of overtime wages which Plaintiff could be awarded for the 105 weeks in question would be $9,660.00.[17] In addition to back overtime wages, Plaintiff requested liquidated damages,[18] and the maximum amount of liquidated damages which Plaintiff could be awarded would be $9,660.00. 29 U.S.C. § 216(b) (employer shall be liable in the amount of unpaid overtime compensation, and in an additional equal amount as liquidated damages). Therefore, the maximum damages awardable to Plaintiff on her FLSA claim is $19,320.00 ($9,660.00 of back overtime wages and $9,660.00 of liquidated damages).

As the Court explained above, Defendant is entitled to a set-off of at least $22,997.23 against any damages awarded to Plaintiff. "A case becomes moot when there are no longer

---

[13] The Court notes that, according to McCarty's affidavit, Plaintiff received a salary of $2,000.00 per month when she was initially promoted to the supervisor position in January, 2004. She received a raise in March, 2005, which increased her salary to $2070.00 per month. The Court's calculations regarding Plaintiff's regular rate of pay over the two years in question and the total amount of damages which Plaintiff could potentially receive in this matter do not account for the lower salary for the first 14 months of Plaintiff's tenure in the supervisor position. Rather, the Court has, solely for the purposes of the calculations herein, assumed the *higher* rate of pay as the rate applicable to the entire two-year period.

[14] [($2,070.00) * (12 months)] / (52 weeks) = $477.69 / (1 week)

[15] ($477.69) / (65 hours) = ($7.35) / (1 hour)

[16] $7.35 * ½ = $3.68; (65 hours – 40 hours) * ($3.68) = $92.00

[17] $92.00 * (105 weeks) = $9,660.00

[18] Plaintiff argues that, in the event of a set-off, the Court may not apply the set-off to liquidated damages, citing Martin v. Ind. Mich. Power Co., 292 F. Supp. 2d 947 (W.D. Mich. 2002). However, the Martin court actually held that a payment of $10,000.00 by a defendant-employer to a plaintiff-employee on the eve of trial did not nullify the employer's liability for liquidated damages, and the Court applied the payment as a set-off against the overtime compensation due and liquidated damages. Id. at 960. It was, however, not a sufficient amount to cover the employer's full amount of liability. Id. at 961. In the case *sub judice*, the Court is not nullifying the employer's liability for liquidated damages. On the contrary, the Court is assuming liability for purposes of determining whether there is an actual case or controversy.

11

adverse parties with sufficient legal interests to maintain the litigation or when the parties lack a legally cognizable interest in the outcome of the litigation." Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 915 (5th Cir. 2008) (quotation omitted); see also Motient Corp. v. Dondero, 529 F.3d 532, 538 (5th Cir. 2008) (where neither a claim for injunctive relief nor claim for damages remained, no case or controversy remained). Therefore, because the maximum damages which Plaintiff could potentially receive in this action ($19,320.00) do not exceed the set-off to which Defendant is entitled ($22,997.23), Plaintiff lacks a "legally cognizable interest in the outcome of [this] litigation," and this case is moot. Sandoz, 553 F.3d at 915. Article III of the United States Constitution limits this Court's jurisdiction to "cases" or "controversies." U.S. CONST. art. III, § 2. When a case no longer presents a live case or controversy, this Court has no jurisdiction. Sherman v. United States, 2008 U.S. Dist. LEXIS 91274, *2 (N.D. Miss. Nov. 7, 2008).[19]

## IV. CONCLUSION

For the reasons stated above, the Court grants Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, as this case no longer presents a live case or controversy. The Court withdraws the portions of its earlier opinions addressing the appropriate statute of limitations to be applied to Plaintiff's claim [67], whether Defendant is entitled to a set-off [67], and the amount of the set-off [77]. Plaintiff's Motion in Limine [94] and Defendant's Motion for an Extension of Time [98] are denied as moot. An order in accordance with this opinion will be entered on this the 3rd day of December, 2009.

---

[19] The Plaintiff also requested attorney's fees. However, "an interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (citation omitted); see also Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990). The only other damages award that Plaintiff requested in her complaint was an award of punitive damages on her fraudulent misrepresentation claim, and the parties previously stipulated to dismiss the fraudulent misrepresentation claim and the punitive damages claim.

                                            **/s/ Sharion Aycock**
                                            **U.S. DISTRICT COURT JUDGE**